Argued January 23, demurrer overruled March 14, 1956

# STATE ex rel MADDEN v. CRAWFORD
295 P. 2d 174

*Roy F. Shields* and *Randall B. Kester,* Portland, argued the cause for plaintiff. With them on the brief was Kenneth E. Brown, District Attorney, Salem.

*Gunther F. Krause,* Portland, argued the cause for defendant. With him on the brief was Charles A. Hart, Portland.

*Charles R. Spackman, Jr.,* Portland, argued the cause for the Oregon State Bar as amicus curiae, in

support of the demurrer. With him on the brief was Robert A. Leedy, Portland.

TOOZE, J.

This is an original proceeding by quo warranto (Oregon Constitution, Art VII, § 2; ORS 30.510), challenging the right of the defendant James W. Crawford, a duly elected, qualified, and acting circuit judge of the state of Oregon for the fourth judicial district (Multnomah county), to sit temporarily as a member of the Supreme Court of Oregon, pursuant to appointment by the Supreme Court, brought by the State of Oregon, ex rel. John R. Madden, as plaintiff, against the said James W. Crawford, as defendant. The matter is now before us upon the general demurrer of defendant to the complaint.

The only question for decision is the constitutionality of ORS 2.060, which provides as follows:

"Whenever the business of the Supreme Court is congested or any judge of that court is by reason of illness, or other good cause, absent or unable to bear his part of the work of the court, the Supreme Court may designate a circuit judge or judges to sit temporarily as a member or members of the Supreme Court while the work of the court may reasonably require the assistance of such circuit judge or judges.

"(2) Any circuit judge so called to assist the Supreme Court shall perform the service so required, and shall be entitled to receive from the state his actual expenses incurred thereby, to be audited and paid as provided by law for the payment of expenses of circuit judges designated for service outside of their respective districts. The salary of the judge shall be the same as when dis-

charging his duties as circuit judge, and no additional salary or compensation shall be allowed.

"(3) Any decision or determination of the Supreme Court while one or more circuit judges is serving on the court under this section shall be binding to the same effect as though all judges were regular members of the Supreme Court."

Due to a large backlog of cases in this court that were undisposed of, resulting in a congested docket, we did on January 6, 1956, acting pursuant to the provisions of the foregoing statute, designate the defendant James W. Crawford, as such circuit judge, to sit temporarily as a member of this court, his service to begin as of the date of his acceptance of the assignment and to continue thereafter at the pleasure of the court. On January 7, 1956, defendant accepted such appointment. Defendant was then named as a member of a department of this court to hear cases set for hearing on January 11 and 12, 1956. One of those cases is that of *Stout v. Madden,* regularly set for hearing on January 12, the plaintiff in this proceeding being the defendant in that case.

On the morning of January 11, 1956, plaintiff presented to this court his complaint in quo warranto, by which he questioned the lawful right of defendant to sit as a member of the court, contending that ORS 2.060, supra, is unconstitutional and void. We assumed original jurisdiction of the cause, and an order was forthwith entered directing that defendant appear and answer the complaint within five days from the date of service upon him of the order and complaint. On January 17, 1956, defendant filed his general demurrer to the complaint, and the cause was orally argued and submitted to us on January 23, 1956. Upon the filing of the complaint, the defendant refrained from sitting

upon the court in hearing the case in question, and since then and pending a determination of the issue before us, has refrained from acting as a member of this court, but has been and is standing by ready immediately to assume and discharge the duties of a member of the Supreme Court should the legislation in question be held constitutional.

■ The question which we are called upon to determine has been presented exhaustively and with great ability, not only by counsel for the litigants but as well by counsel for the Oregon State Bar, which was granted permission to file a written brief and participate in the oral argument as amicus curiae. The question is an important and delicate one, because its decision will directly affect the problem of this court which gave rise to the enactment of the legislation involved. We cannot, however, take into account considerations of expediency in making our decision; our sole duty is to determine whether the statute squares with the Constitution and to render judgment accordingly.

ORS 30.510, in part provides:

"An action at law may be maintained in the name of the state, upon the information of the district attorney, or upon the relation of a private party against the person offending, in the following cases:

"(1) *When any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military,* or any franchise within this state, or any office in a corporation either public or private, created or formed by or under the authority of this state; or, * * *." (Italics ours.)

■ This enactment is the statutory equivalent of the common-law writ of quo warranto, and an action commenced under it is generally referred to as a pro-

ceeding in quo warranto. *State of Oregon ex rel. Anderson et al. v. Port of Tillamook,* 62 Or 332, 124 P 637; *State of Oregon v. Sengstacken,* 61 Or 455, 122 P 292. It is the remedy or proceeding by which is determined the legality of a claim which a party asserts to the use or exercise of an office or franchise and ousts the holder from its enjoyment, if the claim is not well founded. It is the exclusive remedy for such a purpose. 44 Am Jur 94, Quo Warranto § 8; 44 Am Jur 100, Quo Warranto § 22. In 74 CJS 179, Quo Warranto § 4, the rule is stated thus:

"In the absence of constitutional or statutory regulations providing otherwise, *quo warranto proceedings are the only proper remedy in cases in which they are available.* Thus *quo warranto,* or a proceeding in the nature thereof, *is the sole and exclusive remedy* and method by which various matters may be tried and determined, as, for example, *the right and title to office,* * * *." (Italics ours.)

The provisions of ORS 30.510 have been properly invoked in this case.

Plaintiff contends that ORS 2.060 is unconstitutional in the following respects:

1. That it violates § 1 of Art VII of the Oregon Constitution, which requires judges of the Supreme Court to be elected by the legal voters of the state at large;

2. That it violates § 1 of Art III of the Oregon Constitution, which separates the powers of government into three separate departments;

3. That it violates § 16 of Art V of the Oregon Constitution, which empowers the governor to fill vacancies in judicial offices; and

4. That it violates § 1 of Art XV of the Oregon Constitution, which provides that all officers shall hold office until their successors are elected.

Section 1, Art VII, Oregon Constitution, as amended in 1910, provides:

"The judicial power of the state shall be vested in one Supreme Court and in such other courts as may from time to time be created by law. The judges of the Supreme and other courts shall be elected by the legal voters of the State or of their respective districts for a term of six years, and shall receive such compensation as may be provided by law, * * *."

Section 2, Art VII of the Oregon Constitution, as amended in 1910, provides:

"The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. But the Supreme Court may, in its own discretion, take original jurisdiction in mandamus, quo warranto and habeas corpus proceedings."

Under § 1 of Art VII, prior to the amendment of 1910, the judicial power of the state was vested in a supreme court, circuit courts, and county courts, but under the 1910 amendment, circuit courts and county courts were not mentioned. Hence, under § 1 of Art VII, as amended in 1910, the Supreme Court is the only court created by the constitution itself; all other courts are to be created by legislative act. However, it was to prevent a hiatus in the administration of justice pending action by the legislature that the first portion of § 2 of Art VII, as amended in 1910, was adopted. Under this provision, the courts, jurisdiction, and judicial system of the state existing at the time the amendment was adopted were continued in existence until the legislature made changes therein, excepting only where the amendment itself expressly made changes.

By virtue of the provisions of §§ 1 and 2 of Art VII, as amended, the legislature is given wide, but not unlimited, latitude in the creation of courts, in establishing the jurisdiction of and procedure for the courts so created, and in making changes in the judicial system of the state. We mention but a few of the things it may constitutionally do: It may create new and additional courts and provide for the number of judges for each court so created; it may provide for additional judges of courts already established; it may transfer jurisdiction from one court to another (e.g., from county courts to circuit courts); it may provide for an intermediate court of appeals; it may increase the jurisdictional amount of money necessary to an appeal to this court or it might abolish appeals in whole or in part and substitute some other method of review such as certiorari; it may increase the number of judges on this court and, within reasonable limitations, it might reduce the number thereof. But it cannot, either directly or indirectly, abolish this constitutional court, but aside from matters inherently within the power of the court and the specific jurisdiction given us by § 2 of Art VII, as amended, in mandamus, quo warranto, and habeas corpus proceedings, it may limit our jurisdiction, or add to it. In truth, but subject to certain qualifications unnecessary to mention, the legislature is empowered to change at any time the entire judicial system of this state.

However, when the legislature creates a new court and provides for the number of judges therefor, determines the jurisdiction of the court so created and perhaps matters of procedure before it, most, if not all, of its legitimate functions are at an end insofar as that court is concerned. It may create new and additional judgeships, but when new courts and new

judgeships are created by the legislature, they immediately become subject to other constitutional provisions. If the court or judgeship so created is for a particular district of the state, the judge of such court shall be elected by the legal voters of that district, or if for the state at large, by the legal voters of the state, and for a term of six years: § 1 of Art VII, as amended, except that until the next general election following the effective date of the act creating the office, the governor shall fill the office by appointment: § 16, Art V, Oregon Constitution.

 It is the established law of this state that when an office is created by the legislature, it comes into legal existence immediately when the act takes effect, and *ipso facto* becomes vacant at that time. *Cline & Newsome v. Greenwood & Smith,* 10 Or 230, 235; *Baker v. Payne,* 22 Or 335, 29 P 787; 30 Am Jur 738, Judges § 23. Under the constitution of this state the governor only is empowered to fill such vacancy by appointment, which appointment shall expire when a successor shall have been duly elected and qualified. Oregon Constitution, Art V, § 16, supra. A court cannot exist without a judge, and the power to create a court embraces the power to create the office of judge thereof and to confer jurisdiction. 21 CJS 214, Courts § 139. As ordinarily understood and as we use it here, the term "judge" is limited to one who conducts or presides over a court of justice. In Oregon it is strictly and exclusively the function of the legislature to create judgeships, but the law-making body has no constitutional authority to appoint the judges to fill those positions, nor may it delegate such authority to any person or group of persons. Judges are public officers whose duty it is to exercise judicial functions as a part of the judicial department of the government. When

the constitution of a state reserves to the people the power of electing an officer, this impliedly forbids the legislature to appoint him, and, of course, in such circumstances the legislature cannot delegate a power of appointment which it does not have. 42 Am Jur 953, Public Officers § 95. The people of this state in adopting § 1, Art VII of the Constitution provided for the election of the judges of this court, subject to the constitutional power of the governor to make interim appointments when vacancies occur. Pursuant to this constitutional mandate, judges of the Supreme Court must be elected by the people of the state at large for terms of six years. It is axiomatic that any legislative act providing for additional judges of the Supreme Court must conform to the constitutional demand.

Therefore, the solution of the problem now before us becomes a rather simple one. It depends entirely upon the status of a circut judge who has been appointed to sit temporarily on this court and participate in the discharge of its functions, pursuant to the provisions of ORS 2.060, supra. It is patent that in sitting upon hearings before this court and participating in the final decisions thereof, a person must be and is acting as a judge of the court. No person can perform such services unless he is a judge of the court, for those are judicial services rendered to and by the court.

ORS 2.060, supra, itself specifically provides that a circuit judge or circuit judges (no limit to the number thereof) may be designated (appointed) by the Supreme Court to sit temporarily as *a member or as members of the Supreme Court*. It further provides that any circuit judge so called upon to assist the court shall perform the judicial service so required, and that "any decision or determination of the Supreme

Court while one or more circuit judges *is serving on the court* * * * shall be binding to the same effect as though all judges were regular members of the Supreme Court.'' (Italics ours.) In other words, the act assumes to place the temporary incumbent on the same plane and to clothe him with the same power as that of the regular members who have been constitutionally selected to perform the duties of the court; he is authorized to perform the same functions and, of necessity, during the time of the service he is an integral part of the court, although the term of his service is temporary only.

Distinguished counsel for the defendant in their written brief make the following contention:

''The amended Article VII of the Constitution gives to the Legislature authority to define the jurisdiction of all courts and to increase or decrease the jurisdiction with the possible exception that the authority of the Supreme Court to review final decisions of the Circuit Court cannot be taken away by legislative action.''

In support of the contention they invite attention to the numerous instances in which the legislature has increased or decreased the authority and jurisdiction of courts. As examples, they cite ORS 5.040, 3.130, 3.120, and 3.080. In particular, they urge that an analogy may be drawn between the provisions of ORS 3.080, 3.090, and 3.100 and those of ORS 2.060, the statute being attacked in this proceeding. ORS 3.080, 3.090, and 3.100 provide for the performance of judicial duties by a circuit judge duly elected as a judge of a particular judicial district in another judicial district of the state, and to the assignment of circuit judges by the chief justice of the Supreme Court for the per-

formance of such services in judicial districts other than the one in which they were duly elected. These statutes have been held to be constitutional. *Archerd v. Burk,* 148 Or 444, 36 P2d 338. From a constitutional standpoint, counsel argue that there is no real distinction to be drawn between a circuit judge performing judicial services in a judicial district where he has not been elected by the legal voters of that district, and a circuit judge temporarily performing judicial services as a member of the Supreme Court. We are of the opinion that there is a marked difference between the two situations. When holding court in a judicial district other than his own, the judge is still performing the duties of a circuit judge. He is not occupying any office other than that of circuit judge. On this court, he would be performing an entirely different type of service. The authority given the chief justice to make assignments of circuit judges from one judicial district to another is purely ministerial. Moreover, the principal statutes in question had been enacted and were in operation before the adoption of the amendment of 1910 to Art VII. They constituted a part of the jurisdiction of courts and the judicial system of the state at that time. They were given constitutional sanction by § 2 of Art VII, as amended. The first and principal statute dealing with the subject was enacted in 1880. Oregon Laws 1880, p 48. This statute is now subdivided into ORS 3.080 and ORS 3.090. ORS 3.090 provides:

> "Each circuit judge may hold circuit court in any judicial district when, for any reason, the circuit judge elected for such district cannot attend, or is disqualified to try any cause pending therein at the time appointed for holding court or trying the cause."

ORS 3.080 reads as follows:

"(1) In the absence of any circuit judge from his judicial district, or from any county in the district, whereby inconvenience or delay would be occasioned in obtaining orders from him in any suit or action pending therein, or in case of his inability to act, any other circuit judge, whether within or without such district, may grant all necessary orders, to have effect in any cause pending therein as if made by the circuit judge of the district; provided, that the question has not been presented to or passed upon by any other circuit judge in this state.

"(2) All such orders may be enforced in the district where they are pending by any of the circuit judges of this state."

In 1909 the legislature enacted what is now ORS 3.100 (ch 137, Oregon Laws 1909), making it the duty of the chief justice to assign circuit judges from one judicial district to another, to perform services as circuit judges in such district, for the purpose of relieving congested dockets, and for other purposes. Later statutes dealing with the same subject matter do not change in essential features the system established by the enactments of 1880 and 1909, viewing the matter from a constitutional standpoint. In speaking of later statutes, we have in mind ch 242, Oregon Laws 1919; ch 196, Oregon Laws 1923; ch 277, Oregon Laws 1929; ch 83, Oregon Laws 1933.

ORS 2.060 does not provide for a situation where a duly elected circuit judge is required to perform additional duties imposed upon him as such a judge; it presents a situation where a circuit judge is being clothed with final appellate jurisdiction as a member of the Supreme Court, a jurisdiction entirely foreign to the regular duties of a circuit judge. As a member

of this court, he hears and passes upon appeals from the circuit court; he helps decide whether or not this court shall assume original jurisdiction in mandamus, quo warranto, or habeas corpus proceedings. Cases on appeal may be finally decided by him as a member of this court, as his vote may be the decisive vote in any given case, although the Constitution specifically provides that the members of the Supreme Court,— those who shall perform all the duties of the court, acting as a court—must be elected for definite terms of six years by the legal voters of the state at large. Nowhere in the Constitution do we find any authority vested in the legislature to provide for temporary members of the Supreme Court, nor to provide for the temporary appointment of any person to perform the judicial duties of the court, or any part thereof. The Constitution clearly contemplates that only duly and regularly elected or constitutionally appointed members of the Supreme Court, whatever their number, may perform the functions thereof. It is manifest, therefore, that ORS 2.060, supra, violates the constitutional mandate as to the election and tenure of members of the Supreme Court. We need not discuss the question whether the statute also provides an unconstitutional delegation of power to the Supreme Court in the appointment of circuit judges to become temporary members of the court. From what we have already said, it is obvious that if the office created was that of a permanent member of the court, to say nothing about a temporary member, no authority could be constitutionally vested in this court to appoint such member, nor could the legislature itself make the appointment.

 Having been appointed to sit as a member of this court pursuant to the provisions of ORS 2.060, de-

fendant has become a de facto judge thereof; he acts under color of authority. Acts performed by him in that capacity are not invalid. A judge de facto is, to all intents and purposes, a judge de jure as to all persons except the state, and continues as such until he is properly ousted from office. He is not a usurper. His acts or his right to act, as a defacto judge, cannot be collaterally attacked. His title or right to the office can be determined only in quo warranto proceedings, brought by or in the name of the state. Here the attack is direct by quo warranto, and the question of the right of defendant to sit as a member of this court is squarely presented. The color of authority (ORS 2.060) under which defendant assumes to act being unconstitutional and void, defendant is not entitled to occupy the position to which he was appointed by the Supreme Court. 30 Am Jur 806, Judges § 102.

There is no doubt that the Oregon State Bar in sponsoring the enactment of ORS 2.060, and the legislature in enacting it, in good faith and justifiably relied upon the decision of this court on the motion to recall mandate in the case of *Holman et al. v. Lutz et al.,* 132 Or 185, 212, 282 P 241, 284 P 825. Of course, the statute under question in *Holman v. Lutz* was the original statute enacted in 1921. Ch 338, Oregon Laws 1921. That statute was amended in 1955 and is now ORS 2.060, supra. Oregon Laws 1955, ch 127. The court in *Holman v. Lutz* upheld the constitutionality of the 1921 Act. There are some differences between the 1921 Act and the law enacted in 1955. Some of those differences are pointed out by plaintiff in the written brief as follows:

"(1) The 1921 Act provided for pro-tem appointments only when the business of the Court is congested *and* a regular judge is unable to bear

his part of the work, thus limiting the occasions to the absence or disability of a regular Judge. The 1955 Act changed the word 'and' to 'or', thus permitting the appointments whenever the business of the Court is congested, even though all regular judges of the Supreme Court are present and functioning.

"(2) The 1921 Act limited the size of the Court to seven members. The 1955 Act permits the Court to increase the number of members with no maximum limit except the total number of Circuit Judges which may be available.

"(3) The 1921 Act limited the number of pro tempore Judges at any one time to two, thus insuring a majority of regular Judges at all times. This limitation was removed by the 1955 Act, so that a majority, or even all, of the Judges deciding a particular case may be pro tempore Judges."

Those are differences between the two acts, but on the question of constitutionality, they are unimportant. However, the provisions of ORS 2.060 offer more opportunities for abuse than did the Act of 1921. It is unnecessary to mention the many things that might be accomplished under ORS 2.060 that would clearly defeat the manifest purposes of §§ 1 and 2 of Art VII, as well as other constitutional provisions. After giving careful consideration to the able arguments presented by all counsel in this case and to the numerous authorities cited and quoted from in their briefs, we have unanimously arrived at the conclusion that not only ORS 2.060 is unconstitutional and void, but also that the Act of 1921 was unconstitutional and void. Whatever was said in *Holman v. Lutz* that is contrary to our conclusions in this case is expressly overruled. What the court said in *Holman v. Lutz* respecting the constitutionality of the 1921 Enactment was wholly unnecessary to a decision upon the motion

then before it. In fact, the question was not properly before the court. In his specially concurring opinion (132 Or 217), Chief Justice Coshow clearly and correctly pointed this out. Circuit Judge Hamilton, whose authority to sit temporarily as an acting associate justice of this court was collaterally attacked in that case, was a de facto member of the court, and his act in writing the original opinion of the court constituted a valid act. That is the only answer that needed to be or should have been made to the challenge directed to his authority. 48 CJS 949, Judges § 2; 48 CJS 958, Judges § 7; 48 CJS 1016, Judges § 52.

We should not close this opinion without stating that counsel for plaintiff in their brief expressly disclaim any intention to question the judicial competence of Judge Crawford to sit as a member of this court. It also goes without saying that our appointment of Judge Crawford to sit with us is evidence of our own confidence in his judicial qualifications.

The demurrer is overruled.